Gage Hotel Co. v. Union National Bank.

## Gage Hotel Company v. Union National Bank.

1. BANKS AND BANKING—*Deposits with Instructions Not to Pay a Particular Check.*—A bank is not bound to pay a check out of funds deposited by the drawer, after the check is drawn with specific directions not to pay them out on such check.

**Assumpsit,** on a check. Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in this court at the March term, 1897. Affirmed. Opinion filed April 15, 1897.

ASHCRAFT, GORDON & COX, attorneys for appellant.

After a check passes into the hands of a *bona fide* holder for value, it is not in the power of the drawer to countermand its payment, or of the drawee to refuse payment, if at the time payment is demanded appellee has on deposit sufficient funds of the drawer to pay the check. Munn et al. v. Burch et al., 25 Ill. 35; Union National Bank v. Oceana County Bank, 80 Ill. 212; The Chicago Marine & Fire Ins. Co. v. Stanford, 28 Ill. 168; Bickford v. First National Bank, 42 Ill. 238; Brown v. Leckie et al., 43 Ill. 497; National Bank of America v. The Indiana Banking Co., 114 Ill. 483.

If at the time a check is presented to the drawee, and payment demanded, the drawer has on deposit with the drawee funds equal to the amount specified in the check, it is the duty of the drawee to pay the check. Munn et al. v. Burch et al., 25 Ill. 35; Bickford v. First National Bank, 42 Ill. 238; Fourth National Bank v. City National Bank, 68 Ill. 398; Bank of Antigo v. Union Trust Company, 149 Ill. 343; Merchants National Bank v. Retzinger et al., 20 Ill. App. 27.

Tenney, McConnell & Coffeen, attorneys for appellee.

A bank is not bound to pay a check out of funds which it receives after the check is drawn, and with specific directions not to pay them out on that check. Munn v. Burch, 25 Ill. 35; Union National Bank v. Oceana County Bank, 80 Ill. 212; Metropolitan National Bank v. Jones, 137 Ill. 634; Bank of Antigo v. Union Trust Co., 149 Ill. 343.

Mr. Presiding Justice Shepard delivered the opinion of the Court.

The material facts are undisputed. On June 21, 1893, one Henry C. Knill drew a check upon the appellee for three hundred dollars, payable to the order of one Leroy Payne, and delivered such check to Payne, who on the same or the following day indorsed and delivered it to the appellant in exchange for its face amount in currency.

Appellant deposited the check on the same day that it cashed it, to the credit of its bank account with the Union Trust Company, which bank caused the check to be presented to appellee for payment, through the clearing house, on June 23, 1893, but its payment was refused and the words "payment stopped" written on it. The check was, in due course of business, taken up and returned to the appellant on June 24th. After the check came back to the hands of appellant, on June 24th, it was again presented by the appellant, and payment requested of the appellee, but its payment was again refused for the reason, as stated by appellee's paying teller, that its payment had been stopped by the drawer.

Neither at the beginning nor at the close of the bank's business on the date the check was drawn did Knill, the drawer, have sufficient funds on deposit with the drawee to pay it, but at the time it was presented he had more than sufficient on deposit to pay it. He had, however, subsequent to the giving of the check, and while he had only $98.53 to his credit, notified appellee not to pay the check, and all subsequent deposits made by him, whereby his account was increased, were made and received by the bank subject to such notification.

At the time appellant cashed the check for Payne it had no notice that Knill had ordered appellee not to pay it.

Perhaps it is immaterial to the legal rights of the parties, but it may be stated that Knill ordered the appellee not to pay the check because a check given to him by Payne in exchange for it was found to be not good.

The question of law that occurs upon such a state of facts is one of interest, and of much collateral importance.

The general rule stated in Munn v. Burch, 25 Ill. 35, and ever since adhered to in this State, is that the check of a depositor upon his banker, delivered to another for value, transfers to that other the title to so much of the deposit as the check calls for.

In Union National Bank v. Oceana County Bank, 80 Ill. 212, it is said:

" The principle of all the cases in this court on this subject is that when a depositor draws his check on his banker, who has funds to an equal or greater sum than his check, it operates to transfer the sum named to the payee, who may sue for and recover the amount from the bank, and that a transfer of the check carries with it the title to the amount named in the check to each successive holder." See also Metropolitan Nat. Bk. v. Jones, 137 Ill. 634, wherein it is held that the rule is based upon the implied agreement on the part of the bank to pay out deposited money to the holders of the depositor's checks in such sums and at such times as the depositor shall by his checks order it to be done.

It follows that a depositor who has a right to his money on deposit may transfer such right to another by drawing and delivering to him his check therefor, and that the implied agreement by his banker, which arose when the deposit was taken, binds the banker to recognize such transfer and pay the amount of the check to its holder when the check is presented or payment.

But such obligation by the banker must be subject to the contingency that the depositor has sufficient funds in the bank to meet the check when presented. It is not until

presentment of the check to the banker that the transfer made by the depositor becomes obligatory upon the banker in favor of the checkholder. Until presentment of the check there is no privity of contract between the banker and the checkholder, and so unless at the time of presentation, the banker has on hand unappropraited funds of the depositor sufficient to pay the check the banker is under no duty to the checkholder.

Now, in this case, Knill, the drawer, did not have on deposit, when he gave the check, enough to pay it with. His balance at that time was proved to be only $98.53. The check, therefore, did not operate as an assignment or transfer of his bank account to the amount of the check, for such amount did not exist to his credit, and not existing there was no agreement, implied or otherwise, by the bank with relation to the check, in favor either of the drawer or the checkholder.

It will not be claimed that any liability could arise on the part of the bank, because of the check, until it had on deposit enough of the drawer's money to meet it. Before that condition arose, Knill had directed the bank not to pay the check. No liability to the checkholder by the bank existing when such direction was given, what was its right with reference to receiving subsequent deposits from Knill?

It was not obliged to accept any further deposit from him, and unless it did, it would never become liable to the checkholder. Neither was Knill compellable by the bank to make any further deposit with it.

The fact that the check in question was known by the bank and Knill to be outstanding, in no manner altered their right to have no further dealings with each other, and they were free to deal further with one another or not, and if they did, to make such terms as they chose with reference to their further dealings.

The checkholder had no recognized right up to that time against the bank.

Under such circumstances and under an agreement with the bank to the effect that no subsequent deposits should be

applied to the payment of the check in question, Knill made the deposits which increased his account to a sum in excess of the amount of the check on the day it was presented through the clearing house.

We regard such an agreement entered into at a time when both parties were entirely free to act, and before the bank was under any liability whatever to the checkholder, as being one that banks and their depositors are at liberty to make, and as being such an agreement as the business relations between banks and their depositors should require be upheld and protected.

No other questions being argued, we see no occasion to pursue the subject further.

The judgment of the Circuit Court will be affirmed.