## Henry G. Dillaway v. Northwestern National Bank.

1. Banks and Banking—*Power to Correct Mistakes in Certification of Checks.*—In case a bank has, through mistake, certified a check for an amount greater than the drawer has on deposit, it may, upon discovering the mistake, and after the check has been delivered by the bank with certification to the holder, upon again getting temporary possession of it, cancel and make the certification of no effect as between the holder and the bank, provided no rights of other parties have intervened, and the situation or rights of the holder, between the certification of the check and its cancellation, has in no way changed.

Assumpsit, on a certified check. Trial in the Circuit Court of Cook County; the Hon. Elbridge Hanecy, Judge, presiding. Finding and judgment for defendant; appeal by plaintiff. Heard in this court at the October term 1898. Affirmed. Opinion filed March 30, 1899.

Statement of the Case.—Appellant was plaintiff in the court below in a suit to recover on appellee's alleged certification of a check drawn by one of its depositors and indorsed by the payee to appellant.

The check was for $500, dated August 27, 1895, drawn by E. C. Gibson on his account at the Northwestern National Bank, payable to the order of C. R. Goode. The payee indorsed it for value to appellant, and the latter sent it through his bank—the Shawmut National of Boston—for collection, and in September, 1895, it was returned to him unpaid. On being told by the drawer that it was good and would be paid, he sent it again, in February, 1896, to W. O. Lindley, an attorney in Chicago, with instructions to present and collect it. Mr. Lindley went with the check to the appellee bank and presented it to the paying teller. The latter took it, looked at the bank's books, saw that the drawer had just deposited $1,000, told Lindley of this fact and that the check was good, and thereupon certified it in the usual way. Lindley took it to his bank for deposit, but some question being there made upon the fact that the indorsement to the Shawmut National Bank had not been erased, went back to the Northwestern, presented the check

to the teller, and asked for the cash, or a cashier's check for the amount. The teller took the check and handed it to Mr. Dummer, the vice-president. The latter told Mr. Lindley that the teller ought not to have certified the check and that he intended to cancel the certification. Mr. Lindley protested, and demanded the money or the return of the check in the condition in which he had delivered it. Mr. Dummer replied that the bank was perfectly responsible, and the cancellation made no difference in the legal rights of the parties, but that he did not want to let the check get into the hands of a third party. He thereupon drew a pen through the certification, and returned it to Mr. Lindley.

The books of the bank at the opening of business on the morning the check was presented showed an overdraft in the drawer's account of $675.21. The deposit of $1,000 was made before the check was presented.

If the deposit of $1,000 applied to the payment of the overdraft, there was a balance of $324.79 to the drawer's credit when the check was presented. This amount the bank did not retain, nor pay to appellant, but afterward paid it out on other checks.

The declaration contained the common counts and a special count on the check. The defendant filed the general issue verified. The evidence of the state of the drawer's account was objected to as not admissible under the pleadings, but was admitted over the objection.

The court rejected appellant's proposition of law, found the issues for the defendant, and entered judgment, from which this appeal is prosecuted.

TENNY, McCONNELL, COFFEEN & HARDING, attorneys for appellant.

CHARLES M. STURGES, attorney for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

The principal question presented is whether, in case a bank has, through mistake, certified a check for an amount

greater than the drawer then has on deposit, it may, upon discovering the mistake, and after the check has been delivered by the bank with certification to the holder, and upon again getting temporary pessession of it, then cancel the certification and thereby make the certification of no effect as between the holder and the bank, no rights of other parties having intervened, and the holder having in no way changed his situation or rights between the certifying and the cancellation.

It would seem that by the authority of text writers and the decisions of other States, such a mistake may be rectified by canceling the certification, if done before any rights have intervened or been changed by the certification. 1 Morse on Banking (3d Ed.), Sec. 419; 2 Daniel on Neg. Inst. (2d Ed.), Sec. 1608; Tiedeman on Commercial Paper, 221; Second Nat. Bank v. Western Nat. Bank, 51 Md. 128; Troy City Bank v. Grant, 1 Hill & Denio, 119; Irving Bank v. Wetherald, 36 N. Y. 335; Natl. Park Bank v. Steele, 58 Hun, 81.

We are aware that there are English decisions holding, in effect, that an acceptance is irrevocable when made and delivered to the holder of the bill. Thornton v. Dick, 4 Esp. 270; Bentrick v. Dorrien, 6 East, 199.

And it is also true that the decisions relied upon by the authors of the text above cited are decisions in cases of the certifying of promissory notes, and not checks on banks. But the text writers have taken the doctrine announced in these cases as applying in principle as well to bills of exchange generally, and in the text of Morse and Daniels the rule is applied to checks upon banks. We see no logical reason why, if in the one case such mistake of fact may be corrected, when no rights have intervened or been changed so as to make the correction inequitable, it should not as well apply in the other. The principle is the same. Morse announces the rule thus:

" If the bank certifies the check by mistake, under the erroneous impression that it has sufficient funds of the drawer to apply upon it, and if the discovery is made with

reasonable promptitude and immediately notified to the holder, if the check itself still remains in the hands of the party who presented it for certification, and if his position is precisely the same after the revocation that it would have been had the bank originally refused acceptance, if he has not lost his opportunity to charge indorsers, if he has parted with no collateral security, has released no sureties, has not had his power of collection from the drawer of the check diminished by any intermediate occurrence—then it seems that it is not too late for the bank still to undo its mistake; * * * if the circumstances are such that all innocent parties are in the same position as if the bank had refused to certify at first, then it may be revoked."

Daniel says:

"If the bank certifies a check to be good by mistake, under the erroneous impression that the drawer had funds on deposit, when in fact he had none, or has been induced by some fraudulent representations to certify it as good, the certification may be revoked and annulled, provided no change of circumstances has occurred which would render it inequitable for such right to be exercised. If the check still remains in the hands of the holder who held it when it was certified, and the mistake is discovered and notified to him so speedily that he has time afforded him to notify and preserve the liability of indorsers, the bank may retract its certification."

But it is contended that a different rule obtains in this State, and in support thereof counsel for appellant cite the decision in Met. Nat. Bank v. Jones, 137 Ill. 634.

The effect of this and other decisions of our Supreme Court, so far as they bear upon the case here, is to hold that the acceptance or certifying of a check by a bank operates to fix the liability of the bank, irrespective of the condition of the account between bank and drawer; and that it also operates to discharge the drawer from liability to the payee upon the check so certified. But these decisions speak only of the effect of a valid and effective certification. The question presented here is as to whether the certification in question is valid and effective; not as to what its effect would be if it were valid and effective. If it was not an effective certification, but on the contrary was made by mistake and remained

possibly effective only in relation to any rights which might be affected by it, if any such there had been, until the mistake was corrected and thereupon became absolutely inoperative, then we have nothing to do with questions which relate only to the effect of a valid certification.

The rule announced by the New York courts is the same as here as to the effect of the acceptance or certifying of a check by a bank, as indicated by First Nat. Bank v. Leach, 52 N. Y. 350, cited in Met. Nat. Bank v. Jones, *supra*. But the New York courts also hold that a mistake of fact by a bank in certifying a note may be corrected, if such correction does not interfere with rights which have been changed by the certification, as indicated in Irving Bank v. Wetherald and Troy Bank v. Grant, and Nat. Park Bank v. Steele, cited *supra*.

We, therefore, are of opinion that the Illinois decisions do not apply to the facts of this case; and we hold the law to be here as announced by text writers and decisions above cited.

When the $1,000 was deposited, it operated to extinguish the debt owed by the depositor to the bank by reason of the overdraft, and to leave a balance of $324.79 only to the credit of the drawer when the check was presented. The fact that the bank ledger did not show this application at the time the check was presented to be certified, is unimportant. "In other words, when a check is presented to a bank for payment, the bank will take into consideration all the funds which it has received from the drawer subject to check to that time, and the total amount of all sums up to that time which it has paid out on his account. A balance thus ascertained will determine the obligation of the bank to pay or its right to refuse payment, regardless of the fact whether the amounts deposited or the checks paid may have reached the bank ledger or not." Am. Exchange Bank v. Gregg, 138 Ill. 596.

The evidence and admissions of counsel warranted the court in finding that the certification of the check was given through a mistake as to the condition of the drawer's

account. The check had been previously presented and dishonored. When it was again presented the teller learned of the $1,000 deposit and supposed that it was to the credit of the depositor and applicable to this check. He was not aware that it was largely reduced in amount by application to the overdraft. He did not, knowing of the depositor's true balance, undertake to give further credit to the depositor by this acceptance. There is no claim that anything was done by appellant whereby his position was changed by reason of the giving of the certification, and before its cancellation some thirty minutes later. But it is contended that this acceptance should be held to have been valid as to the amount of $324.79, the true balance of the depositor. It is well settled, that the balance of the depositor in bank being less than the amount of the check, the check does not operate to entitle the payee, as against the bank, to such smaller amount. Coates v. Preston, 105 Ill. 470.

We are of opinion that the defense was properly admitted under the pleadings.

We are also of opinion that the court did not err in rulings upon propositions submitted as propositions of law.

The judgment is affirmed.