## Trust Company *v.* National Bank.

1. The defences of the maker of a promissory note can be cut off only by the payee's indorsement of it before maturity.
2. A guaranty written upon it by the payee is not such an indorsement.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. Samuel W. Packard* for the appellant.

*Mr. J. A. Sleeper* and *Mr. H. K. Whiton, contra.*

Mr. Justice Strong delivered the opinion of the court.

This case, as made by the bill, answers, replications, and proofs, is as follows: On the twenty-fourth day of September, 1874, the First National Bank of Wyandotte, Kansas, made its promissory note at Chicago, Illinois, in these words: —

"$5,000.                        Chicago, Illinois, Sept. 24, 1874.

"Four months after date we promise to pay to Cook County National Bank, of Chicago, or order, five thousand dollars, with interest at the rate of —— per cent per annum after due, value received, all payable at Cook County National Bank.

"B. Judd,

"*Cashier 1st Nat'l Bank, Wyandotte, Ka's.*

"$6,000 Wyandotte Co. and City bonds as collateral."

The note was made and delivered to the Cook County Bank, in pursuance of an arrangement between that bank and Judd, the cashier of the Wyandotte Bank, by which it was agreed the latter should execute a four months' note for $5,000, with security, and have the same discounted by the Cook County Bank, and the proceeds placed to the credit of the Wyandotte Bank, but not to be drawn against so as to reduce the credit for such proceeds below $4,000, — such note to remain with the Cook County Bank, and to be surrendered to the maker on the renewal or close of the account. It was distinctly understood between the officers of the two banks when the note was given that it should be held by the Cook County Bank as a memorandum, and not be negotiated or separated from the

Wyandotte city and county bonds for $6,000 accompanying it, which were delivered contemporaneously with it as collaterals. Accordingly, the sum of $4,000, part of the proceeds of the discount, was suffered to remain on deposit to the credit of the Wyandotte Bank, until the Cook County Bank failed, became insolvent, and passed into the hands of a receiver. At the time of such failure and the appointment of a receiver there was also an additional credit of $868 due from the Cook County Bank to the Wyandotte Bank. When, therefore, the note matured there was due from the payee to the maker of the note the sum of $4,868. But before its maturity, to wit, on the seventh day of October, 1874, the Cook County Bank, in violation of its agreement above mentioned, passed the note to the New York State Loan and Trust Company, by which it was discounted, without any knowledge of any defence which the Wyandotte Bank had against it, or any knowledge of the origin of the note and of the agreement between the two banks, other than what the face of the note revealed.

The note was protested when it fell due, and it is now held by the Central Trust Company of New York, the receiver of the New York State Loan and Trust Company, and the collaterals, the municipal bonds, are held still by the Cook County Bank.

This bill has been filed to compel its surrender and the surrender of the Wyandotte city and county bonds on the payment of $132, the difference between $5,000 and $4,868, the sum standing to the credit of the Wyandotte Bank against the payee, the claimant offering to pay that sum.

In view of these facts, fairly deducible from the evidence, it is manifest that, as between the complainant and the Cook County Bank, there is a perfect defence against the note to the extent of $4,868, the sum standing to the credit of the Wyandotte Bank due from the payee. On the payment of $132 the maker of the note has a clear equity to have it surrendered, together with the municipal bonds held as collaterals.

But it is claimed that the Trust Company having received the note before its maturity, and having discounted it in the usual course of business without any knowledge of any equities or defence against it, is entitled to hold it free from any defence

which the maker could set up against the payee; that is, against the Cook County Bank.

A large portion of the argument before us has been expended upon the questions whether, inasmuch as the note was given by the cashier of the Wyandotte Bank at Chicago, and was made payable at a future day, it was not void under the general banking law. We pass those questions as unnecessary to be considered. If it be conceded that the note was valid at its inception, it is certainly true the maker had a good defence against it while it was in the hands of the payee, and we do not perceive that the manner in which the Trust Company or its receiver obtained it puts them or either of them in any better position than the payee occupied.

The note was not indorsed to the Trust Company, and it was not, therefore, taken in the usual course of business by that mode of transfer in which negotiable paper is usually transferred. Had it been indorsed by the Cook County Bank, it may be that the Trust Company would hold it unaffected by any equities between the maker and the payee. But instead of an indorsement, the president of the Cook County Bank merely guaranteed its payment, and handed it over with this guaranty to the Trust Company. The note was not even assigned. There was written upon it only the following:—

"For value received, we hereby guarantee the payment of the within note at maturity or at any time thereafter, with interest at ten per cent per annum until paid, and agree to pay all costs and expenses paid or incurred in collecting the same.

"B. F. ALLEN, *Pres't.*"

In no commercial sense is this an indorsement, and probably it was not intended as such. Allen had agreed that the note should not be negotiated, and for this reason perhaps it was not indorsed. That a guaranty is not a negotiation of a bill or note as understood by the law merchant, is certain. *Snevily* v. *Ekel*, 1 Watts & S. (Pa.) 203; *Lamourieux* v. *Hewitt*, 5 Wend. (N. Y.) 307; *Miller* v. *Gaston*, 2 Hill (N. Y.), 188. In this case, the guaranty written on the note was filled up. It expressed fully the contract between the Cook County Bank and the Trust Company. Being express, it can raise no appli-

cation of any other contract. *Expressum facit cessare tacitum.* The contract cannot, therefore, be converted into an indorsement or an assignment. And if it could be treated as an assignment of the note, it would not cut off the defences of the maker. Such an effect results only from a transfer according to the law merchant; that is, from an indorsement. An assignee stands in the place of his assignor, and takes simply an assignor's rights; but an indorsement creates a new and collateral contract. 2 Parsons, Notes and Bills, 46 *et seq.*, notes.

At best, therefore, the defendants below can claim no more or greater rights than those of the Cook County Bank, and the complainants are entitled to a return of the note and of the collaterals on payment of the sum of $132.

*Decree affirmed.*