(67 N. W. Rep.  140.)

---

M. W. DUNHAM *vs.* PETER L. PETERSON, *et al.*

Opinion filed April 24th, 1896.

**Negotiable Note—Guaranty of Payment.**

> When the payee of a negotiable promissory note transfers it by indorsing thereon a guaranty of payment, the purchaser is an indorsee, within the rule protecting an innocent purchaser of such paper for value, and before maturity, against defenses good between the original parties.

**Indorsee for Antecedent Debt Protected.**

> One who, in the usual course of business, takes such paper in payment of an antecedent debt, is a purchaser for value, within the spirit of the rule that the business world shall be protected in dealing with such paper.

Appeal from Ransom County Court; *Allen*, J.

Action by M. W. Dunham against Peter L. Peterson and others. Judgment for defendants, and plaintiff appeals.

Reversed.

*C. E. Pierson* and *Edward Engerud*, for appellant.

*P. H. Rourke*, for respondents.

CORLISS, J.   The only serious question before us on this appeal is whether the indorsement by the payee of a negotiable note, upon such note of a contract of guaranty of payment at the time he negotiates it for value, destroys its negotiability, and thus renders it, in the hands of the purchaser, subject to all defenses. The notes in question were executed and delivered by defendants to A. H. Laughlin; and, before their maturity, they were transferred by him to the plaintiff.   The consideration for the transfer was a credit by plaintiff upon a note held by him against Laughlin of the amount of these notes so transferred to him.   At the time

of such transfer, plaintiff was under a contract obligation to accept in payment such notes turned over to him by Laughlin as he (the plaintiff) should approve. Plaintiff testified that he approved these notes, and immediately indorsed the amount thereof with the amount of the other notes received and approved by him, upon the note he held against Laughlin, as a payment, to that extent, of such note. The indorsement thereon corroborated his testimony That these facts constitute plaintiff a purchaser for value cannot be doubted. 2 Am. and Eng. Enc. Law, 392; *Barker* v. *Lichtenberger*, (Neb.) 60 N. W. 79; *Insurance Co.* v. *Church*, 81 N. Y. 226; 1 Daniel, Neg. Inst. § 832. In consideration of the negotiation to him of these notes, be canceled to the extent of their face value the indebtedness he held against Laughlin. It is true, he secured, in place of Laughlin's obligation as maker, his liability as guarantor. But the two are not precisely equivalent. We are entirely satisfied that the facts show that plaintiff absolutely extinguished his claim against Laughlin on such note to the amount of the notes so received in payment as so much cash, in pursuance of his previous agreement to accept them as cash. Certainly, a creditor may agree to receive anything in payment; and, when the thing is accepted as so much money, the debt is to that extent extinguished. The creditor cannot thereafter repudiate his act. The only theory on which he can claim that there was in fact no payment is by establishing the fact that the thing accepted was worthless. This cannot be done in this case without assuming as the basis of this claim the postulate that the notes were subject to defenses, on the ground that plaintiff was not a purchaser for value. But this is the very point in controversy. If the plaintiff could not take such a position to defeat the fact of payment, the defendants cannot claim that he (the plaintiff) is not a purchaser for value. We do not care to place the decision on this branch of the case on the ground that one who takes negotiable paper merely as security for an antecedent debt is a purchaser for value. We think, on principle, this is the better rule. This doctrine prevails in

England, and it has been adopted in most of the states of the Union. 1 Daniel, Neg. Inst. § § 831a, 831b; 2 Rand. Com. Paper, § 465, note 6; *Rosemond* v. *Graham*, (Minn.) 56 N. W. 38; *Smith* v. *Biber*, (Me.) 19 Atl. 89. What, in the absence of any statute on the subject, would be decisive with us even if we were in that state of mind on this question described by the phrase "halting between two opinions," is the fact that in the Federal Courts this more universally accepted rule has become the law, by reason of the decision of the Federal Supreme Court in the case of *Railroad Co.* v. *National Bank*, 102 U. S. 14. There should be only one rule in this state, whether the litigant resort to the Federal Court or the state tribunals. But it is a serious question whether the legislature has not, by section 5130, Rev. Codes, settled this question against our view of the better doctrine on principal.

We are therefore brought to the question whether plaintiff's standing as an indorsee of these notes is destroyed by the form of the indorsement. Such indorsement was in the following words: "For value received, I hereby guaranty the within note, waiving notice of protest and demand." Beneath this guaranty the payee, Laughlin, signed his name. In determining whether, under the facts of this case, plaintiff is an indorsee of these notes, we must fall back upon elementary principles, and especially must we keep in mind the foundation of the rule which exempted negotiable paper in the hands of a *bona fide* purchasar from equities existing against it in the hands of the payee. The assignee of an ordinary chose in action took it subject to all defenses. The reason for this rule was the defect in his title. The assignment did not transfer to him the legal title. It was only in equity that he was regarded as the owner. In a court of law he was obliged to sue in the name of the assignor, and on this account the assignment was without prejudice to defenses against the chose in action in the hands of the assignor. But a different rule has long prevailed with respect to negotiable paper. The necessities of commercial life impelled the courts to resort to the fiction that, when such an instrument was transferred, the legal title to

it passed, so that the purchaser could sue on it in his own name, and therefore be unaffected by defenses against it in the hands of the former owner. No precise form of transfer was required to be adopted to pass the legal title, provided it was upon the paper itself. But the courts did insist that nothing should be done by the person negotiating it to affect the negotiable character of the paper. There must always be a transfer of the legal title, and such transfer must take such form as not to indicate a purpose to destroy the negotiable quality of the instrument. Accordingly, it has been held, and it is now the law, that the payee, if the note is not also payable to bearer, must indorse it; othewise, he manifests a purpose to assign the paper as a mere chose in action. Of course, the test is not whether, under existing laws, the legal title to a note is transferred, for this is now true as to all choses in action, whatever form the transfer of them assumes. The inquiry is twofold: First. Was the note so transferred as to pass the legal title to it at common law? Second. Does the manner of the transfer indicate a purpose to destroy the negotiable character of the instrument? The extent of the liability of the payee who indorses the note is not a decisive test. Indeed, it is no test at all. He may incur no liabilities whatever, as by indorsing without recourse, and yet in such a case the note has been negotiated to an indorsee within the law merchant, and the latter is protected as a *bona fide* purchaser if the other elements necessary to such protection exist. Indeed the payee need not indorse at all, to entitle the purchaser to protection, if the note be payable to bearer, or to the payee by name or bearer. *Tescher* v. *Merea*, (Ind. Sup.) 21 N. E. 316. This is also true after it has been indorsed generally by the person who is named as payee. His indorsee may, without himself indorsing it, transfer it, and cut off all defenses. On the other hand it is elementary that the indorser may enlarge his liability without destroying the right of his indorsee to protection as an innocent purchaser. By waiving demand and notice, he changes a conditional liability into an

absolute one. Yet, although such a waiver is made, the indorsee can claim the same exemption from the interposition of desenses to the paper that he could have claimed had there been no waiver. It is therefore apparent that the inquiry whether one is an indorsee of negotiable paper does not depend upon the question whether the person negotiating it has incurred the precise obligation of an indorser. He may incur more liability, or less liability, or no liability at all; and yet the purchaser may be an indorsee, and protected as such. Nor is the form of the indorsement material. It is an indorsement, although it is in terms an assignment. This was held at an early time in England. *Richards* v. *Frankum*, 9 Car. & P. 221. And, with the exception of two states, it appears to be the law in this country. *Adams* v. *Blethen*, 66 Me. 19; *Davidson* v. *Powell*, (N. C.) 19 S. E. 601; *Sears* v. *Lantz*, 47 Iowa, 658; *Sands* v. *Wood*, 1 Iowa, 263; *Merrill* v. *Hurley*, (S. D.) 62 N. W. 958; *Bisbing* v. *Graham*, 53 Am. Dec. 510; *Halley* v. *Falconer*, 32 Ala. 536; *Duffy's Adm'r* v. *O'Conner*, 7 Baxt. 498; *Shelby* v. *Judd*, 24 Kan. 166; *Brotherton* v. *Street*, (Ind. Sup.) 24 N. E. 1068; *Hatch* v. *Barrett*, 34 Kan. 230, 8 Pac. 129; *Crosby* v *Roub*, 16 Wis. 616. See, *contra*, *Aniba* v. *Yeomans*, 39 Mich. 171; *Hatch* v. *Barret*, (Kan.) 8 Pac. 129.

The only argument against the proposition that such an indorsement constitutes an indorsement according to the law merchant is that, by expressing the contract of transfer which is always implied from the mere fact of indorsement, the negotiator of the paper has manifested a purpose to destroy the negotiable character of such paper. But the courts, with the two exceptions above noted, have refused to draw such an inference from the fact that an assignment in terms is written above the indorsement. On what principle, then, can it be said that the fact that a guaranty is written above the indorsement discloses a purpose to affect the negotiable character of the paper. Such a contract is an indorsement, and it is more. It is, indeed, under our statute, exactly equivalent to an indorsement with waiver of demand and notice. An indorser who is not entitled to insist upon

demand and notice, or who, being so entitled, has been charged as an indorser, is a guarantor of the payment of the instrument. See Rev. Code, § § 4636, 4642, 4876, 4881. But, even if we were of opinion that his liability was different from that of an ordinary indorser,—even if we should conclude that in some respects his obligation was more, and in other particulars less, onerous than that of one who indorses in blank,—still the fact would remain that he had transferred the legal title to the paper in a mode sufficient to transfer such legal title according to principles of common law, and that he had not evinced a purpose to destroy the negotiable character of the paper. In such a case it would be true that he had indorsed it, notwithstanding the fact that he had so indorsed it as to alter his liability as an ordinary indorser. As we have already seen, the fact that the exact liability of an indorser is not incurred by one who transfers negotiable paper is not the true criterion whether the purchaser is an indorsee within the scope of the doctrine which throws about an indorsee a distinctive protection. One who is payee or is the holder of negotiable paper, and writes above his indorsement the contract of guaranty of payment, is an indorser with enlarged liability. It is on this ground that the decisions rest which hold that such a transfer of a negotiable instrument is an indorsement of it, within the purview of the rule which shields a *bona fide* indorsee against defenses good between the original parties. *Bank* v. *Haylen*, (Neb.) 16 N. W. 754; *Helmer* v. *Bank*, (Neb.) 44 N. W. 482; *Partridge* v. *Davis*, 20 Vt. 499; *Robinson* v. *Lair*, 31 Iowa, 9; *Buck* v. *Bank*, (Neb.) 45 N. W. 776; *Van Zant* v. *Arnold*, 31 Ga. 210; *Judson* v. *Gookwin*, 37 Ill. 286; *Heaton* v. *Hulbert*, 3 Scam. 489; *Childs* v. *Davidson*, 38 Ill. 437; *Heard* v. *Bank*, 8 Neb. 10; 2 Daniel, Neg. Inst. § 1781. We are aware that authorities can be found on the other side of the question. *Trust Co.* v. *National Bank*, 101 U. S. 70; *Bank* v *Walker*, 55 Fed. 399; *Tuttle* v. *Bartholomew*, 12 Metc. (Mass.) 454; *Lamourieux* v. *Hewit*, 5 Wend. 307; *Belcher* v. *Smith*, 7 Cush. 482; *Taylor* v. *Binney*, 7 Mass. 481. But Massachusetts at one time

inclined to the doctrine we regard as sound. *Upham* v. *Prince*, 12 Mass. 14; *Balkely* v. *Grant*, 6 Mass. 386.

In view of the fact that it has long been the usage in this state of persons and corporations engaged in the business of purchasing and discounting commercial paper to have the indorser sign a guaranty of payment, and in view of the further fact that the legal effect of such an indorsement is precisely the same as that of a simple indorsement with waiver of demand and notice, we would regard it as a very unwise and entirely unjustifiable decision to hold that such a negotiation of such paper was not an indorsement of it within the law merchant. That a guaranty indorsed by a payee on the paper itself is equivalent to an indorsement with waiver is clear under our statutes, and also independently of them, upon common-law principles. Said the court in *Brown* v. *Curtiss*, 2 N. Y. 225, at page 230: "The direct engagement of the indorser of a negotiable note, and of the guarantor of the payment of a note, whether negotiable or not, is the same. Both undertake that the maker will pay the amount when it shall become due. If there is a failure in such payment, both contracts are broken. Ordinarily, upon the breach of a contract, the party bound for its performance immediately becomes liable for the consequent damages. In the case of the indorser of a negotiable promissory note, however, the liability does not become absolute, unless due notice of nonpayment is given to the party whom it is intended to charge. This is not because the indorser has thus stipulated in terms, but it is a condition annexed by the rules of the commercial law. In the case of a guarantor there is nothing to exempt him from the ordinary liability of parties who have broken their contracts, which is direct, and not conditional. No condition requiring notice of nonpayment is inserted in the contract, nor is any inferred by any rule of law." In our judgment, this mooted question, whether the fact that, in addition to indorsing the paper, the person who negotiates it writes above his indorsement a special contract, takes from the act of indorsing the legal character of an indorse-

ment of the instrument, was intended to be put at rest in this state by section 4868, Rev. Codes. This section provides as follows: "One who writes his name upon a negotiable instrument, otherwise than as a maker or acceptor, and delivers it with his name thereon to another person, is called an indorser, and his act is called indorsement." It will not do to assert that this section was passed to settle the question whether one out of the chain of title who indorses negotiable paper before delivering it to the payee, to give it credit, is liable as indorser or guarantor or as joint maker. Section 4877, *Id.*, specifically relates to the subject. It declares that "one who indorses a negotiable instrument before it is delivered to the payee is liable to the payee thereon as an indorser." The only other purpose it could be enacted for, unless we assume it to be a purposeless enactment, was to declare that the act of writing his name upon negotiable paper by the holder thereof, as part of the negotiation thereof to a third person, should be an indorsement, despite the fact that, in connection with the act of indorsement, the indorser has, by special contract, restricted or enlarged his liability as indorser. We think this section is limited to the indorsement by the holder of the paper as part of the act of negotiation thereof. When these facts exist, the mere writing of a special contract above his name will not affect the character of his act as an indorsement. It is an indorsement, nevertheless. We are of opinion that the plaintiff was entitled to protection as a *bona fide* purchaser of negotiable paper, and that, therefore, it was error for the court to permit the defendant to prove a defense good as against the maker.

For this error, the judgment is reversed, and a new trial is ordered. All concur.